IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CUSTOMGUIDE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11 C 945 |
| | ) | |
| CAREERBUILDER, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

On January 7, 2011, plaintiff CustomGuide filed a complaint against defendant

CareerBuilder, LLC ("CareerBuilder") in the Circuit Court of Cook County, bringing the

following claims: breach of contract (Count I); violation of the Computer Fraud and Abuse Act,

18 U.S.C. § 1030(a)(4) (Count II); intentional interference with prospective business

opportunities (Count III); violation of the Illinois Uniform Deceptive Trade Practices Act, 815

ILCS 510/1 (Count IV); violation of the Illinois Consumer Fraud and Deceptive Trade Practices

Act, 815 ILCS 505/1 (Count V); common law misappropriation of intellectual property rights

(Count VI); injunctive relief (Count VII); common law fraud (Count VIII); conversion (Count

IX); accounting (Count X); trespass (Count XI); and unjust enrichment (Count XII). (Compl. ¶¶

44-124 (attached as Ex. A to Dkt. No. 1).) CareerBuilder timely filed a Notice of Removal (Dkt.

No. 1), removing the case to the U.S. District Court for the Northern District of Illinois based on

federal question jurisdiction under 28 U.S.C. § 1331. Currently before this court is

CareerBuilder's "Motion to Dismiss" (Dkt. No. 5). For the reasons explained below,

CareerBuilder's motion is granted in part and denied in part as set forth in the Conclusion section

of this opinion.

BACKGROUND

The following are the relevant facts of this case, viewing the factual allegations in CustomGuide's complaint in the light most favorable to CustomGuide. *See Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011).

CareerBuilder owns and operates the CareerBuilder.com and CareerBuilderInstitute.com websites. (Compl. ¶ 6.) CustomGuide is a Minnesota-based company owned by brothers Jon and Daniel High (collectively "High brothers"). (*Id.* ¶ 11.) The High brothers developed and own online computer application training modules, courses, and related Quick Reference Guides, which train users on how to operate various software programs, such as Microsoft Windows. (*Id.* ¶ 12.) CustomGuide dedicated approximately two years and $1.75 million to develop CustomGuide's online training products. (*Id.* ¶ 13.)

At some point, CareerBuilder engaged CustomGuide in negotiations to obtain a license to sell certain CustomGuide products. (*Id.* ¶ 15.) Throughout those negotiations, the High brothers expressed their concern to Christian Idiodi ("Idiodi"), Director of the CareerBuilder Institute, that CareerBuilder could only sell CustomGuide's products to individual consumers and not to businesses because sales to businesses would directly compete with CustomGuide's business-to-business sales. (*Id.* ¶ 16.) Idiodi repeatedly represented to the High brothers in January and February 2008 that CareerBuilder would only use CustomGuide's products for business-to-consumer sales and as otherwise authorized by the parties' contemplated licensing agreement. (*Id.* ¶ 17.) The High brothers relied on Idiodi's representations and entered into a Partnership and Development Agreement ("Agreement"), which was dated February 4, 2008, and had a one-

2

year term, terminated on February 4, 2009. (*Id.* ¶ 20; Agreement (attached as Ex. A to Compl.).)[1]

Under the terms of the Agreement, CareerBuilder's license was limited to business-to-consumer sales. (Compl. ¶ 21.) CareerBuilder nevertheless decided that it wanted to sell CustomGuide's content in the business- to-business market. (*Id.* ¶ 23.)

On or about August 4, 2008, Idiodi and CareerBuilder.com's Chief Marketing Officer, Richard Castellini ("Castellini"), flew to Minnesota to meet with the High brothers. (*Id* ¶ 26.) CareerBuilder's purported purpose for the meeting was to enter into an agreement with CustomGuide to allow CareerBuilder to use CustomGuide's content for business-to-business sales. (*Id.* ¶ 26.) The High brothers ultimately decided against signing the contract. (*Id.* ¶ 35.)

Despite not having a license for business-to-business sales of CustomGuide's content, CareerBuilder made unauthorized access to CustomGuide's system and used CustomGuide's content for business-to-business sales. (*Id.* ¶ 37.) CareerBuilder also actively promoted and misrepresented CustomGuide's products as CareerBuilder's own products. (*Id.* ¶ 38.) In addition, CareerBuilder.com promoted CustomGuide's products as a value-add to the businesses posting jobs on CareerBuilder.com. (*Id.* ¶ 40.) When posting a job, CareerBuilder.com would provide employers with a hyperlink advertising online training for the posted position. (*Id.*) The hyperlink would be directed to unauthorized samples of CustomGuide's training products, re-branded with the CareerBuilder logo. (*Id.*) CareerBuilder also bundled CustomGuide's Quick

---

[1]  In the complaint, CustomGuide alleges that the Agreement had a one-year term beginning on April 15, 2008. (Compl. ¶ 45.) In its opposition to CareerBuilder's motion, however, CustomGuide states that the Agreement expired in February 2009 (*see* Dkt. 14 ("CustomGuide's Opp.") at 2), which is consistent with the terms of the Agreement (*see* Agreement § 2(a) ("The term of this Agreement will commence on the Effective Date [February 4, 2008] and will continue for a term of one (1) year . . . .").) For purposes of ruling on CareerBuilder's motion, the court assumes that the Agreement expired on February 4, 2009.

Reference Guides with other CareerBuilder products, giving the Reference Guides to CareerBuilder's customers for free. (*Id.* ¶ 41.) CustomGuide eventually demanded that CareerBuilder discontinue this process. (*Id.* ¶ 42.) Initially, CareerBuilder did comply with CustomGuide's request but then returned to distributing CustomGuide's Quick Reference Guides for free to CareerBuilder's customers. (*Id.*) After the termination of the Agreement, CareerBuilder continued to access CustomGuide's system and sell CustomGuide's products to consumers. (*Id.* ¶ 43.)

CustomGuide filed a complaint in the Circuit Court of Cook County against CareerBuilder bringing claims for breach of contract (Count I); violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4) (Count II); intentional interference with prospective business opportunities (Count III); violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 (Count IV); violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/1 (Count V); common law misappropriation of intellectual property rights (Count VI); injunctive relief (Count VII); common law fraud (Count VIII); conversion (Count IX); accounting (Count X); trespass (Count XI); and unjust enrichment (Count XII). (Compl. ¶¶ 44-124.) After removing the action to the U.S. District Court for the Northern District of Illinois (Dkt. No. 1), CareerBuilder filed its "Motion to Dismiss" (Dkt. No. 5), which is currently before the court.

LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the . . . claim is and the

grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting

*Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although the complaint need not contain "detailed

factual allegations," "labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." *Twombly,* 550 U.S. at 555. The complaint must "include sufficient

facts 'to state a claim for relief that is plausible on its face.'" *Cole v. Milwaukee Area Tech.*

*Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (quoting *Justice v. Town of Cicero*, 577 F.3d 768,

771 (7th Cir. 2009)). In ruling on a Rule 12(b)(6) motion, the court "construe[s] the . . .

[c]omplaint in the light most favorable to Plaintiff, accepting as true all well-pleaded facts and

drawing all possible inferences in [its] favor." *Id.*

ANALYSIS

In its motion, CareerBuilder moves to dismiss all of CustomGuide's claims. The court

will address each claim in turn.

I.      Breach of Contract (Count I)

The parties do not dispute that Illinois law applies to CustomGuide's state law claims.

To state a claim for breach of contract under Illinois law, the plaintiff must allege the following:

"(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3)

breach of contract by the defendant; and (4) resultant injury to the plaintiff." *See, e.g., Van Der*

*Molen v. Wash. Mut. Fin., Inc.*, 835 N.E.2d 61, 69 (Ill. App. Ct. 2005).

CareerBuilder argues that CustomGuide's breach of contract claim should be dismissed

for two reasons. First, according to CareerBuilder, the breach of contract claim fails because

CustomGuide alleges that the purported breaches occurred after the February 2009 expiration of

the contract. Thus, CustomGuide's complaint does not plead the first element of the breach of

contract claim: a valid contract. Second, CareerBuilder argues that even assuming that CustomGuide had adequately pleaded a breach of contract claim, that claim is preempted by the Copyright Act.

In response to CareerBuilder's first argument, CustomGuide contends that its complaint alleges "that CareerBuilder knowingly and willfully breached the parties' [Agreement] multiple times and in multiple ways prior to the Agreement's expiration in February 2009." (Dkt. No. 14 ("CustomGuide's Opp.") at 2.) CustomGuide's opposition, however, does not identify any allegations in the complaint that expressly involve pre-February 2009 actions (*see id.*), and CustomGuide cannot amend its complaint in response to a motion to dismiss, *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1103 (7th Cir. 1984)).

CustomGuide also argues that its breach of contract claim is based on CareerBuilder's purported breach of the Agreement's confidentiality provision, which survived the termination of the Agreement by two years. *See* Agreement § 7(b). The complaint, however, does not reference this provision of the Agreement. In fact, CustomGuide's complaint suggests that the parties did not have such a confidentiality agreement. Specifically, the complaint states: "One would think a sophisticated company like CareerBuilder would offer . . . a non-disclosure or similar type agreement that would protect CustomGuide's valuable information from CareerBuilder's misuse. But that apparently is not how CareerBuilder does business, at least not when CareerBuilder is just dealing with a couple of brothers from Minnesota." (Compl. ¶ 32.) The court, therefore, finds that the allegations in CustomGuide's complaint are insufficient to place CareerBuilder on notice that CustomGuide's breach of contract claim is based on a breach

of the Agreement's confidentiality provision.  Consequently, CustomGuide's breach of contract claim (Count I) is dismissed without prejudice for failure to state a claim.

If CustomGuide can replead its breach of contract claim consistent with this opinion and with Federal Rule of Civil Procedure 11, the court disagrees with CareerBuilder that the claim would necessarily be preempted by federal copyright law.  Section 301 of "[t]he Copyright Act preempts 'all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106' and are 'in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103.'"  *Seng-Tiong Ho v. Taflove*, No. 10-2144, 2011 WL 2175878, at *8 (7th Cir. June 6, 2011) (quoting 17 U.S.C. § 301(a)).  The Seventh Circuit has "distilled" two elements of copyright preemption from the language of § 301:  "First, the work in which the right is asserted must be fixed in tangible form and come within the subject matter of copyright as specified in § 102. Second, the right must be equivalent to any of the rights specified in § 106."  *Id.* (quoting *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 674 (7th Cir. 1986)).  Those rights encompass the "'reproduction, adaptation, publication, performance, and display' of the copyrighted work."  *Id.* (quoting *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 909 (7th Cir. 2005)).  "To avoid preemption, a state law must regulate conduct that is qualitatively distinguishable from that governed by federal copyright law–i.e., conduct other than reproduction, adaptation, publication, performance, and display."  *Id.* (quoting *Toney*, 406 F.3d at 910).

In *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1455 (7th Cir. 1996), the Seventh Circuit "refrain[ed] from adopting a rule that anything with the label 'contract' is necessarily outside the

[Copyright Act's] preemption clause," but nevertheless held that "a simple two-party contract is not 'equivalent to any of the exclusive rights within the general scope of copyright' and therefore may be enforced." Thus, in this case, the fact that the Agreement relates to copyrightable material would not prevent CustomGuide from enforcing the Agreement against CareerBuilder.

II.     Violation of the Computer Fraud and Abuse Act (Count II)

Section 1030(a)(4) of the Computer Fraud and Abuse Act ("CFAA") provides that anyone who

> knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period . . . shall be punished as provided in subsection (c) of this section.

18 U.S.C. § 1030(a)(4). Section 1030(g) of the CFAA creates a civil cause of action for "[a]ny person who suffers damage or loss by reason of a violation of this section." 18 U.S.C. § 1030(g). To state a civil claim for a violation of the CFAA, the plaintiff must allege "1) damage or loss; 2) caused by; 3) a violation of one of the substantive provisions set forth in § 1030(a); and 4) conduct involving one of the factors in § 1030(c)(4)(A)(i)(I)-(V)." *Cassetica Software, Inc. v. Computer Scis. Corp.*, No. 09 C 0003, 2009 WL 1703015, at *3 (N.D. Ill. June 18, 2009) (Kendall, J.).

CareerBuilder contends that CustomGuide has not adequately alleged a "loss" as required by the CFAA. In response, CustomGuide argues that it has sufficiently pleaded a "loss" by alleging that "CareerBuilder's access to the CustomGuide system for business to business sales resulted in a loss to CustomGuide in a one-year period that in the aggregate exceeded $5,000 in value." (CustomGuide's Opp. 6 (quoting Compl. ¶ 65).) The court disagrees.

The FCAA defines a "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred *because of interruption of service.*" 18 U.S.C. § 1030(e)(11) (emphasis added). In *Cassetica Software*, Judge Kendall explained that "[w]ith respect to 'loss' under the FCAA, other courts have uniformly found that economic costs unrelated to computer systems do not fall within the statutory definition of the term." 2009 WL 1703015, at *4. Rather, the purported loss "must relate to the investigation or repair of a computer system following a violation that caused impairment or unavailability of data." *Id.* Consequently, "[l]ost revenues that are not related to the impairment of a computer system are not recoverable under the CFAA." *Id.*

Here, CustomGuide has not alleged any facts connecting its purported "loss" to an interruption of service of its computer systems. Viewing the allegations in the complaint in the light most favorable to CustomGuide, CustomGuide's complaint describes an economic loss of revenues related CareerBuilder's making "business to business sales." (*See* Compl. ¶ 65.) Because such economic losses do not fall within the definition of "loss" under the CFAA, CustomGuide has failed to state a CFAA claim, and that claim is dismissed without prejudice.

III.    Violation of the Illinois Uniform Deceptive Trade Practices Act (Count IV)

Under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 ("UDTPA"), "any conduct in a business which creates a likelihood of consumer confusion or misunderstanding is potentially actionable." *Unique Coupons, Inc. v. Northfield Corp.*, No. 99 C 7445, 2000 WL 631324, at *3 (N.D. Ill. May 16, 2000) (Leinenweber, J.). The UDTPA provides

that "[a] person *likely to be damaged* by a deceptive trade practice of another may be granted injunctive relief upon terms that the court considers reasonable."  815 ILCS § 510/3 (emphasis added).

CareerBuilder argues that CustomGuide's UDTPA claim should be dismissed because that claim is preempted by federal copyright law, or in the alternative, because "CustomGuide has . . . failed to adequately plead 'facts which would indicate that [it] is likely to be damaged in the future'" as required by 815 ILCS § 510/3.  (Dkt. No. 10 ("CareerBuilder's Mem.") at 8.)

First, regarding CareerBuilder's federal preemption argument, courts in this district have distinguished between UDTPA claims premised on "passing off" as opposed to those based on "reverse passing off." "Passing off . . .occurs when a producer misrepresents his own goods or services as someone else's.  'Reverse passing off,' as its name implies, is the opposite: The producer misrepresents someone else's good or services as his own." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 n.1 (2003) (internal citations omitted).  Although passing off claims generally "avoid 17 U.S.C. § 301 preemption, reverse passing off claims tend not to survive." *Cyber Websmith, Inc. v. Am. Dental Ass'n*, No. 09-CV-6198, 2010 WL 3075726, at *3 (N.D. Ill. Aug. 4, 2010) (Dow, J.).

In this case, CustomGuide identifies the following allegations in its complaint as the basis for its UDTPA claim:  "CareerBuilder also actively promoted and misrepresented CustomGuide's products as CareerBuilder's own" (Compl. ¶ 38); and "CareerBuilder.com would give employers a link advertising Online Training for the posted position.  Employers who clicked this link would be directed to unauthorized samples of CustomGuide's training product, rebranded with the CareerBuilder logo" (*id.* ¶ 40).  Based on these allegations, the court

finds that CustomGuide's UDTPA claim is premised on a theory of "reverse passing off," as opposed to "passing off," and, as currently plead, that claim is preempted by federal copyright law.

CustomGuide, however, argues that even if its UDTPA claim is based on reverse passing off, that claim involves an extra element of a "likelihood of confusion." Thus, federal copyright preemption, CustomGuide contends, does not apply. The court disagrees.

Although federal copyright law does not preempt a state law claim that "incorporate[s] an extra element that changes the nature of the action so that it is qualitatively different from a copyright infringement claim," *Cyber Websmith*, 2010 WL 3075726, at *2 (quoting *Kluber Skahan & Assocs. v. Cordogen, Clark & Assocs.*, No. 08-cv-1529, 2009 WL 466812, at *10 (N.D. Ill. Feb. 25, 2009)), CustomGuide's UDTPA claim does not involve such an "extra element." As Judge Dow explained in addressing this issue in *Cyber Websmith,* "consumer confusion and deception . . . have been held to be inherently present in any copyright action and are therefore not considered extra elements that qualitatively alter the nature of a claim where they are asserted." *Cyber Websmith*, 2010 WL 3075726, at *3 (alteration in original) (quoting *Lacour v. Time Warner, Inc.*, No. 99 C 7105, 2000 WL 688946, at *7 (N.D. Ill. May 24, 2000)). This court is persuaded by the reasoning in *Cyber Websmith* and similarly agrees that in this case, CustomGuide's allegations regarding consumer confusion do not protect CustomGuide's UDTPA claim from copyright preemption. Here, as in *Cyber Websmith*, CustomGuide's "allegations derive from nothing more than 'the inherent misrepresentation that accompanies the unauthorized copying and distribution of another's copyrighted work,' which is simply 'not enough' to avoid preemption." 2010 WL 3075726, at *3 (quoting *Kluber Skahan*, 2009 WL

11

466812, at *10). Accordingly, CustomGuide's UDTPA claim is dismissed without prejudice.

Although the court need not reach CareerBuilder's alternative argument for dismissing this claim–that CustomGuide's complaint does not allege that CustomGuide will be damaged in the future by CareerBuilder's actions–the court nevertheless will address this argument for completeness should CustomGuide decide to replead its UDTPA claim. In the complaint, CustomGuide alleges that "[t]he continued dissemination of the false and/or misleading materials by CareerBuilder will harm CustomGuide." (Compl. ¶ 80.) At the motion to dismiss stage, the court must accept this allegation as true, *see Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011), and the court finds that this alleged fact is sufficient for purposes of pleading CustomGuide's future harm. Thus, assuming CustomGuide ultimately is able to state a UDTPA claim that survives federal preemption, CareerBuilder's alternative argument regarding CustomGuide's allegations of future harm would not be a basis for dismissal.

IV.    Violation of the Illinois Consumer Fraud Act (Count V)

In its motion, CareerBuilder also argues that CustomGuide's Illinois Consumer Fraud Act ("ICFA") claim is preempted by federal copyright law or alternatively should be dismissed because CustomGuide has failed to allege sufficient facts to state a claim under the ICFA. The ICFA "is a regulatory and remedial statute intended to protect consumers . . . against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 669 (7th Cir. Ill. 2008) (alteration in original) (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002)). A plaintiff may recover under the ICFA "for unfair as well as deceptive conduct." *Robinson*, 775 N.E.2d at 960.

Here, CustomGuide's ICFA claim is based on the same conduct as its UDTPA claim. (*See* CustomGuide's Opp. 8.)  With respect to the preemption of its ICFA claim, CustomGuide repeats the same arguments it made in connection with the preemption of its UDTPA claim.  For the reasons explained above, this court is not persuaded by these arguments and finds that CustomGuide's ICFA claim, like its UDTPA claim, is preempted.  CustomGuide's ICFA claim therefore is dismissed without prejudice.

Should CustomGuide decide to replead its ICFA claim, the court also addresses CareerBuilder's alternative argument that CustomGuide's allegations do not satisfy the Federal Rules of Civil Procedure's pleading requirements.  First, contrary to CareerBuilder's arguments, the court is not convinced that Federal Rule of Civil Procedure 9(b)'s heightened pleading standard applies to CustomGuide's ICFA claims. Unfortunately CustomGuide did not address the appropriate pleading standard in its opposition to CareerBuilder's motion, but based on the court's research, an ICFA claim is only subject to Rule 9(b) if the claim involves allegations of fraud.  *See Windy City*, 536 F.3d at 670 ("Because neither fraud nor mistake is an element of unfair conduct under Illinois' Consumer Fraud Act, a cause of action for unfair practices under the Consumer Fraud Act need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)."); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011) (explaining that although Rule 8 governs ICFA claims premised on "an unfair practice," Rule 9(b) applies to ICFA claims based on fraudulent activity).  Thus, to the extent that CustomGuide's ICFA claim is premised on CareerBuilder's purported fraud, Rule 9(b)'s heightened pleading standards would apply. Insofar as that claim is based on other non-fraudulent conduct, CustomGuide's pleadings would

only need to comply with Rule 8. Because the parties have neither discussed this distinction in their briefs nor addressed whether the ICFA claim is based on CareerBuilder's alleged fraud, the court offers no opinion as to whether CustomGuide's ICFA claim would otherwise satisfy the federal rules' pleading requirements if that claim were not preempted.

Lastly, CareerBuilder argues that CustomGuide's ICFA claim is deficient because CustomGuide has failed to plead the requisite "consumer nexus." This argument is not persuasive. Courts in this district have explained that "to state a claim under the Consumer Fraud Act, 'the plaintiff must either allege it was a consumer of the defendant *or* allege a nexus with Illinois consumers.'" *Vulcan Golf, L.L.C. v. Google Inc.*, 552 F. Supp. 2d 752, 777 (N.D. Ill. 2008) (Manning, J.) (emphasis in original) (quoting *Gold v. Golden G.T., L.L.C.*, No. 05 C 288, 2005 WL 2465815, at *4 (N.D. Ill. Oct. 4, 2005) (Filip, J.)). To plead a consumer nexus, "a plaintiff need only allege that the conduct complained of 'involves trade practices directed to the market generally or otherwise implicates consumer protection concerns.'" *Id.* (quoting *Gold*, 2005 WL 2465815, at *4). "Businesses have standing to sue under the Consumer Fraud Act to redress competitive injury they suffer when other businesses deceive customers." *Id.* (quoting *Pain Prevention Lab, Inc. v. Elec. Waveform Labs, Inc.*, 657 F. Supp. 1486, 1493 (N.D. Ill. 1987)). Here, CustomGuide has adequately pleaded a consumer nexus by alleging that CareerBuilder "intended that general consumers and the general public rely on its unfair, unlawful and deceptive business practices." (Compl. ¶ 85.) Failure to allege a consumer nexus, therefore, would not be a grounds for dismissing CustomGuide's ICFA claim.

V.      Common Law Misappropriation of Intellectual Property Rights (Count VI)

CareerBuilder also has moved to dismiss CustomGuide's common law misappropriation

claim, arguing that this claim is preempted by federal copyright law. To the extent that CustomGuide's misappropriation claim is based on CareerBuilder's distribution of CustomGuide's training products, CustomGuide does not appear to dispute that this claim is preempted. (*See* CustomGuide's Opp. 13-14.)

CustomGuide, however, also contends that its misappropriation claim is based on CareerBuilder's "fraudulently obtain[ing] CustomGuide's confidential and proprietary business-to-business procedures, processes, and systems and us[ing] that information to develop its own illicit and competing business-to-business sales model for CustomGuide's products." (CustomGuide's Opp. 14.) CustomGuide's misappropriation count in the complaint, however, does not explicitly identify such allegations. (*See* Compl. ¶¶ 87-92.) Instead, that count states that "CustomGuide has a property right in the exclusive use of its content, in its own reputation, and in its current and future clients and business" and that "CareerBuilder's use of a fake testimonial and/or CareerBuilder's use and sale of CustomGuide's products without a license to do so misappropriated CustomGuide's intellectual property." (*Id.* ¶¶ 89-90.)

Nor does the court find that CareerBuilder's incorporation by reference of paragraphs 1 through 86 of its complaint into its misappropriation count places CareerBuilder on notice that the basis for CustomGuide's misappropriation claim is the alleged misappropriation of certain proprietary information. Courts have discouraged this type of "shotgun" pleading where "each count incorporate[s] by reference all preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged [are] not material to the claim, or cause of action, appearing in a count's heading." *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 650 n.22 (11th Cir. 2010). Such pleadings make it "virtually impossible to know which allegations

15

of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). Consequently, the court finds that as currently plead, CustomGuide's common law misappropriation claim is based on the distribution of CustomGuide's copyrightable products and accordingly is preempted by federal copyright law. CustomGuide's misappropriation claim is dismissed without prejudice.

VI.     Injunctive Relief (Count VII)

        CareerBuilder has also moved to dismiss CustomGuide's claim for injunctive relief because this claim is either preempted or not adequately pleaded. The court agrees with CareerBuilder that this claim should be dismissed but for a different reason. Namely, an injunction "is an equitable remedy, not a separate cause of action." *Walker v. Bankers Life & Cas. Co.*, No. 06 C 6906, 2007 WL 967888, at *4 (N.D. Ill. Mar. 28, 2007) (Conlon, J.). Consequently, CustomGuide's claim for injunctive relief is dismissed with prejudice. The court, however, expresses no opinion as to whether CustomGuide ultimately may be entitled to equitable injunctive relief.

VII.    Common Law Fraud (Count VIII)

        Next, CareerBuilder argues that CustomGuide's common law fraud claim should be dismissed. To state a claim for fraud under Illinois law, the plaintiff must allege the following: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Tricontinental Indus. v. PricewaterhouseCoopers, L.L.P.*, 475 F.3d 824, 841 (7th Cir. 2007) (quoting *Connick v. Suzuki Motor Co.,* 675 N.E.2d 584, 591 (Ill. 1996)). Because a fraud claim

is subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), the complaint "must state with particularity the circumstances constituting fraud or mistake." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (quoting Fed. R. Civ. P. 9(b)). In other words, "a plaintiff ordinarily must describe the 'who, what, when, where, and how' of the fraud." *Id.* at 441-42 (quoting *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009)).

According to CareerBuilder, CustomGuide's fraud claim should be dismissed because CustomGuide has not pleaded a misrepresentation that supports the fraud claim. In response, CustomGuide contends that its fraud claim is based on Idiodi misrepresenting to CustomGuide that CareerBuilder would only access CustomGuide's site to sell CustomGuide's products to consumer customers as opposed to businesses. This misrepresentation, according to CustomGuide, was intended "to induce CustomGuide to enter the Agreement and give CareerBuilder access to products that CareerBuilder intended to sell, and did sell, to business consumers." (CustomGuide's Opp. 10-11.) Relying on Judge Alesia's decision in *Medline Indus. v. Maersk Med. Ltd.*, 230 F. Supp. 2d 857 (N.D. Ill. 2002), CareerBuilder argues that CustomGuide's fraud claim should be dismissed because that claim is based on the same conduct as CustomGuide's breach of contract claim and a "claim of fraud cannot be premised on a mere failure to perform under a contract." (CareerBuilder's Reply 13.)

*Medline*, however, does not support CareerBuilder's position. In *Medline*, the court explained that "[a]lthough a fraud claim cannot be premised on the fraudulent non-performance of the contract itself, *a party can allege fraud in the making of the contract*." 230 F. Supp. 2d at 867 (emphasis added). Here, CustomGuide's fraud claim is based on CareerBuilder's purported

misrepresentations that allegedly induced CustomGuide into entering into the Agreement with CareerBuilder. CareerBuilder has not cited any authority stating that an intentional fraud claim cannot be based on fraud that occurred in the making of the contract.[2] Consequently, based on CareerBuilder's arguments to the court, the court finds that CareerBuilder has failed to demonstrate that CustomGuide's fraud claim is legally deficient at this time.

However, insofar as CustomGuide's fraud claim is based on representations made by CareerBuilder during the parties' August 4, 2008 meeting, that claim is dismissed without prejudice. The complaint does not identify any misrepresentations made by CareerBuilder during the August 4, 2008 meeting nor does it allege how CustomGuide purportedly relied to its detriment on any such misrepresentations. Accordingly, the allegations in the complaint do not support a claim for common law fraud based on the August 4, 2008 meeting.[3]

## VIII.  Accounting (Count X)

"To state a claim for the equitable relief of an accounting, a plaintiff must allege the absence of an adequate remedy at law." *Kempner Mobile Elecs., Inc. v. Southwestern Bell Mobile Sys.*, 428 F.3d 706, 715 (7th Cir. 2005). Additionally, the "plaintiff must allege at least

---

[2] *R.J. O'Brien & Associates, Inc. v. Forman*, 298 F.3d 653, 657 (7th Cir. 2002), also cited by CareerBuilder, does not support the opposite result. In *R.J. O'Brien*, the court did not address whether a plaintiff could state a claim for intentional fraud based on alleged fraud in the making of the contract.

[3] CareerBuilder also argues that CustomGuide's fraud claim is preempted by federal copyright law, but CareerBuilder does not develop this argument. Instead, it simply states that "the underlying breach of contract claim would be preempted by the Copyright Act so the [fraud] claim fails for that reason as well." (CareerBuilder's Mem. 13.) Because the court not only finds that CustomGuide has stated a claim for common law fraud that is distinguishable from CustomGuide's breach of contract claim, but also declines to hold at this time that CustomGuide's breach of contract claim is preempted, CareerBuilder has not established that the fraud claim is preempted by the Copyright Act.

one of the following: (1) a breach of a fiduciary relationship, (2) a need for discovery, (3) fraud, or (4) the existence of mutual accounts which are of a complex nature." *Id.* Here, CustomGuide's complaint does not allege the absence of an adequate legal remedy. Accordingly, CustomGuide's claim for an equitable accounting is dismissed without prejudice.

IX.     Unjust Enrichment (Count XI I)

In its motion, CareerBuilder argues that CustomGuide's claim for unjust enrichment is preempted by federal copyright law. Under Illinois law, to state a claim for unjust enrichment, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989).

CustomGuide argues that its unjust enrichment claims are "founded on the improper use of plaintiffs' work product" and consequently are not preempted. (CustomGuide's Opp. 14.) The court disagrees. First, insofar as this claim is based on the allegation that CareerBuilder was unjustly enriched by its "act of using/selling and/or giving away CustomGuide's products and services to further its own financial interest" (Compl. ¶ 123), CustomGuide does not explain why the claim is not preempted, and the court finds that copyright preemption would apply. CustomGuide does not dispute that its products are copyrightable subject matter, and the alleged distribution of these products falls within the rights protected by copyright law. *See Seng-Tiong Ho v. Taflove*, No. 10-2144, 2011 WL 2175878, at *8 (7th Cir. June 6, 2011).

Second, regarding CustomGuide's argument that its unjust enrichment claim is also based on "factual allegations that CareerBuilder used proprietary information to develop its own

illicit and competing business-to-business sales model for CustomGuide's products and take

sales from CustomGuide" (CustomGuide's Opp. 14), CustomGuide did not expressly set forth

that allegation within its unjust enrichment count.  Instead, that count only identifies

CareerBuilder's alleged "acts of using, selling and/or giving away CustomGuide's products and

services to further its own financial interests."  (Compl. ¶ 123.)  Although the unjust enrichment

count also incorporates paragraphs 1 through 121 of the complaint, as explained above, the use

of such "shotgun" pleadings in this case does not provide adequate notice that CustomGuide's

unjust enrichment claim is based on CareerBuilder's alleged use of CustomGuide's proprietary

information.  CustomGuide's unjust enrichment claim, therefore, is dismissed without prejudice

based on federal copyright preemption.

CustomGuide further argues that to the extent its unjust enrichment claim overlaps with a

copyright infringement action, that claim would not be preempted if CareerBuilder engaged in

extraterritorial infringement.  (CustomGuide's Opp. 15.)  CustomGuide's complaint, however,

does not allege any facts related to extraterritorial infringement.  CustomGuide may amend the

complaint to include such allegations if it can do so consistent with this opinion and with Federal

Rule of Civil Procedure 11.

X.      Intentional Interference with Prospective Business Opportunities (Count III); Conversion
        (Count IX); and Trespass (Count XI)

Finally, regarding CustomGuide's claims for intentional interference with prospective

business opportunities (Count III), conversion (Count IX), and trespass (Count XI),

CustomGuide does not respond to CareerBuilder's motion but rather concedes that to the extent

those claims "may be preempted by the Copyright Act as currently pled, CustomGuide

respectfully seeks leave to amend those claims." (CustomGuide's Opp. 15.) CustomGuide, however, has not explained how it would amend those claims to avoid preemption.

"[D]istrict courts have broad discretion to deny leave to amend where . . . the amendment would be futile." *Arreola v. Godinez,* 546 F.3d 788, 796 (7th Cir. 2008). Here, based on CareerBuilder's arguments for dismissing these claims and CustomGuide's failure to respond to these arguments, the court finds that allowing CustomGuide to replead these claims would be futile. Consequently, CustomGuide's claims for intentional interference with prospective business opportunities (Count III), conversion (Count IX), and trespass (Count XI) are dismissed with prejudice.

CONCLUSION

For the reasons explained above, CareerBuilder's motion to dismiss (Dkt. No. 5) is granted in part and denied in part. With respect to CustomGuide's claims for breach of contract (Count I); violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4) (Count II); violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 (Count IV); violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/1 (Count V); common law misappropriation of intellectual property rights (Count VI); accounting (Count X); and unjust enrichment (Count XII), those claims are dismissed without prejudice. Additionally, CustomGuide's claims for intentional interference with prospective business opportunities (Count III); injunctive relief (Count VII); conversion (Count IX); and trespass (Count XI) are dismissed with prejudice. Finally, CareerBuilder's motion to dismiss CustomGuide's common law fraud (Count VIII) is denied. CustomGuide has leave to file an amended complaint consistent with this opinion and with Federal Rule of Civil Procedure 11 by

September 8, 2011.  CareerBuilder is to answer or otherwise plead by September 22, 2011.  A status hearing is set for September 27, 2011 at 9:00 a.m. to set further dates.

ENTER:

*James F. Holderman*

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date:   August 24, 2011