IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CUSTOMGUIDE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-C-945 |
| | ) | |
| CAREERBUILDER, LLC | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

On August 24, 2011, the court granted in part and denied in part the motion to dismiss of defendant CareerBuilder, LLC ("CareerBuilder"). (Dkt. No. 20.) Thereafter, plaintiff CustomGuide filed its First Amended Complaint (Dkt. No. 32), alleging breach of contract (Count I), common law fraud (Count II), and copyright infringement (Counts III-V). Currently before this court is CareerBuilder's "Motion to Dismiss First Amended Complaint." (Dkt. No. 33.) For the reasons explained below, CareerBuilder's motion is granted in part and denied in part.

BACKGROUND

The following are the relevant facts of this case, viewing the factual allegations in CustomGuide's First Amended Complaint in the light most favorable to CustomGuide. *See Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011).

CareerBuilder owns and operates the CareerBuilder.com and CareerBuilderInstitute.com websites. (First Am. Compl. ¶ 6.) CustomGuide is a Minnesota-based company owned by brothers Jon and Daniel High (collectively the "High brothers"). (*Id.* ¶ 11.) The High brothers developed

1

and own online computer application training modules, courses, and related Quick Reference Guides, which train users on how to operate various software programs, such as Microsoft Windows. (*Id.* ¶ 12.) CustomGuide dedicated approximately two years and $1.75 million to develop CustomGuide's online training products. (*Id.* ¶ 13.)

At some point, CareerBuilder engaged CustomGuide in negotiations to obtain a license to sell certain CustomGuide products. (*Id.* ¶ 17.) Throughout those negotiations, the High brothers expressed their concern to Christian Idiodi ("Idiodi"), Director of the CareerBuilder Institute, that CareerBuilder sell CustomGuide's products only to individual consumers and not to businesses because sales to businesses would directly compete with CustomGuide's business-to-business sales. (*Id.* ¶ 18.) Idiodi repeatedly represented to the High brothers in January and February 2008 that CareerBuilder would use CustomGuide's products only for business-to-consumer sales and as otherwise authorized by the parties' contemplated licensing agreement. (*Id.* ¶ 19.) The High brothers relied on Idiodi's representations and entered into a Partnership and Development Agreement ("Agreement"), which was dated February 4, 2008, and had a one-year term. (*Id.* ¶ 22; Agreement (attached as Ex. A to First Am. Compl.)) Under the terms of the Agreement, CareerBuilder's license was limited to business-to-consumer sales. (First Am. Compl. ¶ 23.) CareerBuilder nevertheless decided that it wanted to sell CustomGuide's content in the business-to-business market. (*Id.* ¶ 25.)

On or about August 4, 2008, Idiodi and CareerBuilder.com's Chief Marketing Officer, Richard Castellini ("Castellini"), flew to Minnesota to meet with the High brothers. (*Id* ¶ 28.) CareerBuilder's purported purpose for the meeting was to enter into an agreement with CustomGuide to allow CareerBuilder to use CustomGuide's content for business-to-business sales.

2

(*Id.* ¶ 28.) The High brothers ultimately decided against signing the contract. (*Id.* ¶ 37.)

Despite not having a license for business-to-business sales of CustomGuide's content, CareerBuilder made unauthorized access to CustomGuide's system and used CustomGuide's content for business-to-business sales. (*Id.* ¶ 39.) CareerBuilder also actively promoted and misrepresented CustomGuide's products as CareerBuilder's own products. (*Id.* ¶ 40.) In addition, CareerBuilder.com promoted CustomGuide's products as a value-add to the businesses posting jobs on CareerBuilder.com. (*Id.* ¶ 42.) When posting a job, CareerBuilder.com would provide employers with a hyperlink advertising online training for the posted position. (*Id.*) The hyperlink would be directed to unauthorized samples of CustomGuide's training products, re-branded with the CareerBuilder logo. (*Id.*) CareerBuilder also bundled CustomGuide's Quick Reference Guides with other CareerBuilder products, giving the Reference Guides to CareerBuilder's customers for free. (*Id.* ¶ 43.) CustomGuide eventually demanded that CareerBuilder discontinue this process. (*Id.* ¶ 44.) Initially, CareerBuilder complied with CustomGuide's request but then returned to distributing CustomGuide's Quick Reference Guides for free to CareerBuilder's customers. (*Id.*) After the termination of the Agreement, CareerBuilder continued to access CustomGuide's system and to sell CustomGuide's products to consumers. (*Id.* ¶ 45.)

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While "detailed factual allegations" are not required, "labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. The complaint must "include sufficient facts 'to state a claim for relief that is plausible on its face.'" *Cole v. Milwaukee Area Tech. College Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (quoting *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In ruling on a Rule 12(b)(6) motion, the court "construe[s] the . . . [c]omplaint in the light most favorable to Plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in his favor. *Id.*

ANALYSIS

I.  Count I: Breach of Contract

CareerBuilder first moves to dismiss Count I, CustomGuide's breach of contract claim that CareerBuilder used CustomGuide's software beyond the scope of the license in ¶ 4 of the Agreement. CareerBuilder argues that because the Agreement expired on February 4, 2009, CustomGuide cannot maintain a breach of contract action for CareerBuilder's activities after that date. Paragraph 10(e) of the Agreement, however, provides that "the obligations of the parties with regard to indemnification and payment shall survive the termination of this Agreement. Sections 2, 4, 6 and 7 shall also survive and remain in effect in accordance with their terms." Agreement ¶ 10(e). CareerBuilder discounts that provision by contending that the phrase "in accordance with their terms" limits ¶ 10(e) so that it applies only if the relevant paragraphs contain explicit survival terms. Thus, for example, ¶ 2 provides that CustomGuide will let CareerBuilder's existing customers continue to access its software for 90 days after termination, and ¶ 7 extends a

confidentiality provision for two years after termination. In contrast, ¶ 4 articulates no such extended time period, but instead provides that "CareerBuilder will have no right to use the [licensed materials] apart from or in any manner inconsistent with this Agreement." Agreement ¶ 4(a).

CareerBuilder's argument goes too far. Were CareerBuilder's reading correct, ¶ 10(e) would have no effect on ¶ 4 at all, and would thus render the inclusion of ¶ 4 in the list of paragraphs that survive termination superfluous. But CareerBuilder's reading is impermissible, because in Illinois, "[a] court will not interpret a contract in a manner that would nullify or render provisions meaningless." *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011). Instead, the court reads the promise in ¶ 4 not to use the licensed materials "apart from or in any manner inconsistent with this Agreement" to include a promise not to use the materials after the Agreement terminates. Moreover, under ¶ 10(e), that promise persists and is enforceable against post-termination actions.

That reading is consistent with the background assumptions behind all licensing agreements. As one treatise noted:

> A licensee that continues to use the subject matter after the license ends breaches the contractual agreement unless the contract permits this as a means of reducing the effect of termination; the licensee was obligated to discontinue use or return the subject matter at the end of the contract term. That obligation can be express in the agreement or implicit in ordinary understanding of the commercial context. If I lease the right to use my commercial drill press for seven days and you continue to use it for three weeks, you have breached a contractual obligation to end your use and return the property at the end of the contract, whether or not there was express language obligating you to do so.

Raymond T. Nimmer & Jeff Dodd, *Modern Licensing Law* §11:26 (rev. 2011). One can thus assume that all licensing agreements contemplate an action for breach of contract if the licensee continues to use the licensed material after the license expires. The language in the Agreement, although not pellucidly clear, confirms that assumption in this case. CareerBuilder's motion to dismiss Count I

5

is denied.

II.     Count II: Common Law Fraud

To state a claim for fraud under Illinois law, the plaintiff must allege the following: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Tricontinental Indus. v. PricewaterhouseCoopers, L.L.P.*, 475 F.3d 824, 841 (7th Cir. 2007) (quoting *Connick v. Suzuki Motor Co.,* 675 N.E.2d 584, 591 (Ill. 1996)).  As CareerBuilder concedes, the court previously held that CustomGuide stated a claim for common law fraud (Dkt. No. 20, at 16-18), and the fraud count in the First Amended Complaint is substantially identical to the count in the original pleading.  CareerBuilder erroneously contends that the First Amended Complaint includes an additional allegation in the fraud count that should be dismissed:

> 101.    Additionally, CareerBuilder knowingly and falsely misrepresented that a testimonial on its website was for a CareerBuilder product when CareerBuilder knew that the testimonial was for a CustomGuide product.

In fact, the allegation in ¶ 101 was pleaded in the initial complaint. (Dkt. No. 1-1 ("Compl.") ¶ 107.) Regardless, ¶ 101 is superfluous and immaterial to the claim of fraud in Count II and does not, in itself, sufficiently allege an additional fraudulent act.[1]  Paragraph 101 of the First Amended Complaint is therefore stricken and dismissed.  The rest of Count II will be allowed to stand without ¶ 101.

---

[1] Although ¶ 101 alleges that the statement was false and that CareerBuilder knew it was false, it does not allege reliance, intent to induce reliance, or damages.

6

III.     Counts III-V: Copyright Infringement

Finally, CareerBuilder moves to dismiss Counts III-V insofar as they allege copyright infringement of the copyrights covered by seven February 18, 2005 registrations issued to O'Reilly Media, Inc. (the "O'Reilly Copyrights"). (First Am. Compl. ¶¶ 47-53.) According to CareerBuilder, the First Amended Complaint fails to sufficiently allege that CustomGuide has an ownership interest in those copyrights allowing it to bring an infringement action. *See NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 235 n.5 (7th Cir. 1995) ("[T]o prevail on a claim of copyright infringement, a plaintiff must prove ownership of a copyright and a copying of protectable expression 'beyond the scope of a license[.]'" (quoting *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 519 (9th Cir. 1993))).

Section 501(b) of the 1976 Copyright Act allows a plaintiff to sue for copyright infringement if he is either the "legal or beneficial owner." 17 U.S.C. § 501(b). The court agrees with CareerBuilder that the First Amended Complaint provides no indication that CustomGuide is the legal owner of the O'Reilly Copyrights. But the complaint does allege that CustomGuide granted O'Reilly the right to copyright the material in return for "the exchange of royalties."[2] Moreover, "an author who assign[s] his work in exchange for royalties" is "the classic example of a beneficial owner." *Moran v. London Records, Ltd.*, 827 F.2d 180, 183 (7th Cir. 1987). Counts III-V are sufficient to state claims for copyright infringement, and CareerBuilder's motion to dismiss them is denied.

---

[2] First Am. Compl. ¶¶ 47-53. CareerBuilder contends that CustomGuide's allegation is insufficient to allege beneficial ownership, given that CustomGuide does not describe what the royalties cover or to whom they are paid. In the context of the First Amended Complaint, however, one can infer that O'Reilly paid the royalties to CustomGuide in return for the right to copyright the material. Thus, the allegation is sufficient to establish beneficial ownership.

CONCLUSION

For the reasons stated above, CareerBuilder's Motion to Dismiss First Amended Complaint, (Dkt. No. 33) is denied in part and granted in part. Paragraph 101 of the First Amended Complaint is stricken and dismissed because it is superfluous and immaterial. The other parts of Count II, Count I, and Counts III-V will stand, as each properly states a claim. CareerBuilder's answer is due November 30, 2011. Counsel are to confer pursuant to Rule 26(f) and jointly file a Form 52 on or before December 8, 2011. The case is set for status and entry of a scheduling order at 9:00 AM on 12/13/11. The parties are encouraged to discuss settlement.

ENTER:

_____
JAMES F. HOLDERMAN

Chief Judge, United States District Court

Date: November 15, 2011